DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AMERICAN FIRST FEDERAL, INC.,**
Appellant,

v.

**TRUGON PROPERTIES, INC., NECTALIER GONZALEZ, JR.,** and
**MARIO FUENTES** as personal representative of
**ESTATE OF EDELBERTO TRUJILLO,**
Appellees.

No. 4D2024-1194

[July 2, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE-22-008247.

Glen M. Lindsay and Caitlin Bronstein of Saavedra | Goodwin, P.A., Fort Lauderdale, for appellant.

Manuel Farach of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., West Palm Beach, for appellees.

DAMOORGIAN, J.

American First Federal, Inc. ("Lender") appeals the trial court's entry of final judgment in favor of Trugon Properties, Inc. ("Trugon"), Nectalier Gonzalez ("Gonzalez"), and Mario Fuentes as personal representative of Estate of Edelberto Trujillo ("Trujillo") (collectively "Borrowers"). The final judgment had the effect of modifying a previously entered foreclosure judgment based on a purported oral agreement. Finding merit in Lender's argument that the oral agreement violates the Banking Statute of Frauds, we reverse the portion of the final judgment finding that an enforceable oral forbearance agreement was created. We affirm without further comment, however, the portion of the final judgment declaring the expiration of the limitations period on an action to enforce the personal guarantees of Gonzalez and Trujillo.

By way of background, in 2005, Trugon obtained a $2,600,000 loan from Wachovia Bank. The loan was secured by a promissory note and

mortgage on commercial property. Gonzalez and Trujillo also each executed personal guarantees on the promissory note. Several years later, Wachovia Bank assigned the loan to Lender.

In 2008, Lender commenced a mortgage foreclosure action against Borrowers. During the pendency of the foreclosure action, the parties entered into a stipulation agreement to resolve the action in its entirety. Per the stipulation agreement, the parties agreed if Borrowers failed to make the required mortgage payments, pay taxes, and make certain improvements to the property, Lender could seek a foreclosure judgment.

In 2009, after Borrowers had defaulted on the stipulation agreement, the trial court entered final judgment of foreclosure in Lender's favor. The final judgment was in the amount of $2,533,622.70 and included a 25% post-judgment interest rate.

A foreclosure sale was originally scheduled for June 2009. The foreclosure sale, however, was canceled and rescheduled multiple times while the parties attempted to negotiate a loan modification. In July 2011, the parties signed a written agreement that the foreclosure judgment was still in full force and effect; the earlier negotiations did not constitute a binding oral agreement; and any oral agreement would be reduced to a written agreement and signed by all parties. Specifically, the written agreement stated, "While Borrower and Lender may reach agreement on one or more preliminary issues, Borrower and Lender have agreed that neither the Borrower nor the Lender shall be bound by any agreement on individual issues until our agreement has been reduced to a written agreement and signed by both the Borrower and Lender."

From 2011 to 2012, the parties continued negotiating a loan modification. Although those efforts culminated in a written forbearance agreement, the parties never signed the written agreement. Instead, pursuant to an alleged oral agreement, Borrowers agreed to make capital improvements on the property and monthly payments in exchange for Lender agreeing to not proceed with a sale of the property. The monthly payments represented 7% interest on the amount listed in the foreclosure judgment. From 2009 to 2020, Borrowers made the monthly payments, which Lender accepted without objection.

In 2021, Lender filed a motion to reset the foreclosure sale. In the motion, Lender contended that the amount paid by Borrowers was insufficient to satisfy the foreclosure judgment and that the judgment should therefore be amended to reflect the "accurate amount due and owing" by Borrowers. The trial court denied Lender's motion. Lender

thereafter filed an amended motion to amend the final judgment in the foreclosure action. That motion was apparently never pursued and currently remains pending.

In 2022, Borrowers filed a new action seeking, among other things, to reform the final judgment entered in the foreclosure action to "conform to the parties' oral loan modification agreement." Alternatively, in the event the oral agreement was deemed unenforceable, Borrowers sought damages on the basis of unjust enrichment.

Following a bench trial, the trial court entered final judgment in Borrowers' favor. In the final judgment, the trial court concluded the parties "entered into an enforceable oral contract whereby [Lender] agreed to forbear any action in the foreclosure litigation in exchange for monthly payments of $20,000, representing principal and interest, at an interest rate of 7%, and certain capital improvements to the Property." In other words, the parties orally agreed to modify the interest rate listed in the foreclosure judgment from 25% to 7%. The trial court also concluded the oral forbearance agreement did not violate the statute of frauds. Notably, the trial court, without making any findings regarding essential terms such as the length of the forbearance term or any allowance or instructions for prepayment, found that the agreement could be completed within one year. Additionally, in light of the trial court's finding that an oral agreement existed, the trial court dismissed as moot the Borrower's unjust enrichment claim. This appeal follows.

On appeal, Lender argues that the oral forbearance agreement must be in writing and signed by all parties to be enforceable under the Banking Statute of Frauds. We agree.

Florida's Banking Statute of Frauds expressly provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." § 687.0304(2), Fla. Stat. (2012). Under the statute, a credit agreement is defined as "an agreement to lend *or forbear repayment of money . . .* , to otherwise extend credit, or to make any other financial accommodation." § 687.0304(1)(a), Fla. Stat. (2012) (emphasis added). The oral forbearance agreement at issue in this case is both an agreement which forbears repayment of money and which makes a financial accommodation, thus implicating the Banking Statute of Frauds. *See Brisbin v. Aurora Loan Servs., LLC*, 679 F.3d 748, 752 (8th Cir. 2012) (rejecting the argument that a promise to postpone a foreclosure sale is not a "financial accommodation" under Minnesota's credit agreement statute of frauds); *see also Vargas v.*

*Deutsche Bank Nat'l Tr. Co.*, 104 So. 3d 1156, 1168 n.8 (Fla. 3d DCA 2012) (citing *Brisbin* and noting that "Florida's banking statute of frauds is based on Minnesota's credit agreement statute of frauds").

Accordingly, as the alleged oral forbearance agreement is neither in writing nor signed by all parties, the agreement is unenforceable under the Banking Statute of Frauds. *See Vargas*, 104 So. 3d at 1168–69 (holding that because a loan modification agreement which extended credit and made a financial accommodation was not signed by the parties, the agreement was unenforceable under the Banking Statute of Frauds). As we noted in *Wells Fargo Bank, N.A. v. Richards*, the point of Florida's Banking Statute of Frauds is to preclude precisely the type of oral modification that the Borrowers asserted in the underlying case. 226 So. 3d 920, 923 (Fla. 4th DCA 2017) ("There is no indication in the statute that the legislature intended to import three centuries of case law into the new statute to permit the creation of oral modification to credit agreements.").

Nonetheless, Borrowers argue that the alleged oral forbearance agreement could have been performed within one year, thus exempting it from the statute of frauds. We reject this argument. Firstly, as noted above, the trial court failed to make any specific findings as to how the alleged oral agreement could be completed within one year. Secondly, as outlined above, the Banking Statute of Frauds, applicable in this case, expressly states that a credit agreement must be in writing. Additionally, the parties themselves signed the aforementioned 2011 agreement, expressly stating that neither would be bound by any future agreement unless it was in writing and signed by all parties.

Based on the foregoing, we reverse the trial court's final judgment finding a valid oral forbearance agreement, and remand for reinstatement of the original final foreclosure judgment in Lender's favor. In so doing, we do not opine as to any amounts now owed under the foreclosure judgment or any setoff to which Borrowers may be entitled.

*Affirmed in part, reversed in part, and remanded with instructions.*

MAY and LEVINE, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**